# CHARLESTON.

## ALDERSON *v.* KAHLE.

Submitted January 21, 1914. Decided February 13, 1914.

1. LIBEL AND SLANDER—*Declaration—Actionable Words.*

    It suffices in a common law count for defamation to charge in appropriate terms and connection, the use of such words as ''thief'' and ''robber,'' and it is not necessary to charge accusation of the commission of a specific offense. (p. 691).

2. SAME—*Defenses—Privilege.*

    The common law defenses of privilege in actions for defamation are available in actions for statutory slander. (p. 692).

3. SAME—*Privileged Communications—Questions for Jury.*

    A communication made in the course of an altercation concerning personal or property rights and bearing some reasonable relation to the subject matter of the controversy, is privileged, and it should be left to the jury to say whether the defendant has abused his privilege. (p. 692).

4. SAME—*Meaning of Words—Intention—Question for Jury.*

    The sense in which actionable words were used, when the utterance thereof has been attended by facts and circumstances indicating their use in a qualified sense, so as to make them convey, to those who heard them, a meaning different from the one ordinarily accorded them, is a question for jury for determination. (p. 693).

5. SAME—*Mitigating Circumstances—Actual Malice.*

    Instructions given in an action for slander so drawn as to limit the effect of mitigating circumstances to the inquiry as to the existence of actual malice, deprive the defendant of the benefit of the consideration of such facts by the jury in the ascertainment of the amount of the damages and are erroneous. (p. 695).

6. SAME—*Mitigating Circumstances—Intoxication.*

    In such cases ,intoxication of the defendant at the time of his use of the slanderous words is a mitigating circumstance proper for the consideration of the jury in estimating the damages (p. 695).

7. SAME—*Mitigating Circumstances—Provocation.*

    Provocation by the plaintiff, inducing the utterance of the slanderous words, is a mitigating circumstance also. (p. 696).

(ROBINSON, JUDGE, dissenting.)

Error to Circuit Court, Nicholas County.

Action for slander by F. N. Alderson against L. N. Kahle. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded for New Trial.*

*Morrison & Riele* and *G. G. Duff,* for plaintiff in error.

*Craig & Wolverton* and *Brown & Eddy, A. N. Breckenridge, James G. Bunting* and *R. S. Spilman,* for defendant in error.

POFFENBARGER, JUDGE:

The declaration in this action, charging the utterance of slanderous and insulting words by the defendant, consists of two counts, in the first of which the words spoken are treated as actionable at common law and in the other as actionable under the statute. There was a demurrer to the first count only and the court overruled it.

The plaintiff is an attorney at law in good standing and repute and the defendant a physician and the owner of a boarding house. The latter had instituted a criminal proceeding against a certain woman, charging her with having absconded from said boarding house after having obtained credit and accommodation thereat, with intent to defraud defendant out of the sum of $25.00. She employed the plaintiff as her attorney in the matter, and, on the day fixed for her trial before a justice of the peace and at the office of the justice, there was an interview between plaintiff and defendant in the course of which the latter denounced the former as being "a Nicholas County robber," "a West Virginia cur," "a Nicholas County cur and thief," and "a thieving cur" and charged that he was "trying to help" the woman "to rob" him:

The words "thief" and "robber" are clearly actionable at common law, for they import guilt of criminal offense. *Bourland* v. *Eidson,* 8 Gratt. 27; *Cheatwood* v. *Mayo,* 5 Munf. 16; *Smith* v. *Moors,* 74 Vt. 81; *Line* v. *Speis,* 139 Mich. 484; *Dallis* v. *Mayer,* 107 N. Y. S. 316. It is not necessary to charge a specific offense. Odgers, Lib. and Slan. pp. 47, 48. It suffices to charge the utterance of a general word or words, importing guilt of a punishable offense. In a declaration in a civil action, the high degree of certainty, characteristic of

indictments, is not required, and the gravamen of the action for slander is not the alleged offense. As the count charges the use of the words complained of here in connection with professional acts of the plaintiff, and consequent loss of business and impairment of professional standing are averred, it states a common law cause of action, even though the epithets applied should not be regarded as actionable when used under other circumstances. *Mosley* v. *Moss,* 6 Gratt. 534; *Hoyl.* v. *Young,* 1 Wash. 150. Obviously the demurrer was properly overruled.

In its rulings upon prayers for instructions, the trial court refused to submit to the jury an inquiry as to whether the occasion on which the words complained of were used, brought the defendant within the immunity of privilege as to them, and gave instructions so framed as to bar such inquiry. They were not privileged as having been used in the course of judicial procedure.

The altercation took place outside of the justice's office, when there was no trial in progress. Some or all of the denunciations were repeated after the parties went into the office, but they related to the quarrel which originated outside and not to any procedure in the action. There was in fact no trial that day, the justice having postponed it, because, in his opinion, the mental condition of the parties suggested the wisdom of a continuance.

Two other grounds of privilege are suggested, defense of property or an interest of the defendant in the subject matter of the interview and defense of his character or personal feelings, both of which rights are recognized by law. Odgers, Libel and Slander 289, 291; Newell Def. L. and S., secs. 108-110, pp. 509, 510. Formerly, these defenses to statutory slander, insulting words, were not permitted nor could the defendant justify by plea and proof of the truth of the charges made by him. *Brooks* v. *Calloway,* 66 Gratt. 466. Such was the judically declared effect of the provision, saying no plea, exception or demurrer should be sustained, to preclude a jury from passing upon the words charged in the declaration. But, in 1849, the statute was amended by the elimination of the word "plea" and "exception" and the insertion of a provision for a plea of justification, and these

alterations have restored, or conferred, the common law defense of privilege. *Chaffin* v. *Lynch,* 83 Va. 106. The right incident to a privilege of this kind does not extend so far, however, as to authorize the set off of one independent calumny against another. A communication, to be privileged on the ground of defense of self or property or interest, must have been made under an honest belief of its truth, and it must bear some reasonable and fair relation to the right invaded and intended to be protected. If the purpose is to protect a property or other interest, the communication must not extend to something wholly foreign to the subject matter of the controversy. If it is made in defense of character, the retort must be in the nature of an answer to the attack made, Newell, Def. L. and S., sec. 110, p. 510, sec. 120 p. 519. "This case must be distinguished from those in which the party pleading the excuse of "privilege" is guilty of making use of the occasion to utter charges of a character foreign to its legitimate purpose. As, for instance, if this defendant had, in addition to his statements in relation to the supposed theft, gone on to incriminate the plaintiff generally, or to accuse her of unchastity, it would have been the duty of the court, in an action for uttering such charges, to instruct the jury that as to such words, not appropriate to the legitimate objects of the occasion, it furnished the defendant no excuse whatever." Wells, J., in *Brow* v. *Hathaway,* 95 Mass. 239. "But even in rebutting an accusation, the defendant must not intrude unnecessarily into the private life of his assailant, or make counter charges against his character, unconnected with his original charge against the defendant." Odgers, Lib. and Slan., p. 202.

The defendant is not necessarily held to accountability for the use of the words in their technical or even ordinary meaning. All the surrounding circumstances go in as evidence, not only to enable the jury to ascertain whether the language used was spoken maliciously and properly to assess the damages, but also to determine in what sense they were used. "The defendant may plead the circumstances showing that the words were not used by him in their ordinary signification. *    *    *    *    He is allowed thus to give evidence of all the surrounding circumstances, in order to place the jury so far

as possible in the position of by-standers, so they may judge how the words would be understood on the particular occasion." Newell, Def. Lib. and Slan., sec. 6, p. 274. "People not unfrequently use words, and are understood to use words, not in their natural sense, or as conveying the imputation which in ordinary circumstances and apart from their surroundings they would convey, but extravagantly and in a manner which would be understood by those who hear or read them as not conveying the grave imputation by a mere consideration of the words themselves." Lord Herschell in *Newspaper Co.* v. *Bennett,* 1894 App. Cas 287, 288; Odgers, Lib. and Slan., p. 121.

Under these principles, it was competent for the jury to find, if they thought the evidence justified them in doing so, that the defendant used the words "robber", "thief" and "cur" merely by way of denunciation of the plaintiff's conduct in and about the defense of the prosecution of the woman, conducted by the defendant, and without actual malice or intent to cast upon the plaintiff any imputation of crime, and for the sole purpose of protecting his interest in the litigation and repelling the charge of drunkenness made against him. In *Chaffin* v. *Lynch,* cited, the defendant, in the course of a controversy conducted through a newspaper on a question of veracity, called the plaintiff a "scoundrel" and said he "would be unprincipled enough to deny" the act he had been accused of "when charged with it," and the court held the communication was privileged, and left it to the jury to say whether the defendant had abused his privilege, and had acted with malice, and not honestly, and in the protection of his own interest. In the declaration and proof are found circumstances indicating the use of the words in a qualified sense. The plaintiff charges the defendant with having accused him of "trying to help" the woman "to rob" him, and then uttering the denunciatory words, "robber", "thief" and "cur." And the defendant and his wife testify to insults given by the plaintiff in the same connection.

In view of the facts thus disclosed, the court erred in refusing to give the following instruction: "The court instructs the jury, that the real question for you to determine first in this case is was the words or epithets spoken by the defendant

honestly and in good faith, upon probable cause, he believing at the time the plaintiff was trying to take advantage of him in the cause then pending before the Justice's court, and was the act done for a laudable purpose, to protect himself and his property, and if you think from, the preponderance of the credible evidence in the case that it was so done, then your verdict should be for the defendant." The others on the same subject were properly refused. They were all abstract in form and some of them assumed as true facts in issue.

Two instructions given at the instance of the plaintiff were erroneous and prejudicial in that they precluded the jury from allowing certain circumstances, disclosed by the evidence, to mitigate the damages, or, if they did not deny this right, they were equivocal as to whether they could have such effect and, therefore, misleading. The justice said, in his testimony, he thought Kahle was under the influence of whiskey on the occasion of his use of the words complained of. There was also evidence that the plaintiff, in the course of the altercation, declared the defendant was drunk and crazy and called upon by-standers to take him away. In view of this evidence, the court intsructed the jury that the intoxication of the defendant, if any "should not be considered even in mitigation of damages unless" they believed "the defendant was so badly intoxicated as to have lost control of his reason, or as to negative malice." So framed, the instruction permitted consideration of the circumstance as matter of complete exoneration from actual malice, and forbade its consideration as matter of mitigation, affecting, not the question of liability for actual malice, but only the quantum of damages; for it told the jury they should not consider it at all, unless it was so intense as to have caused loss of control of reason or to have negatived malice, in either of which cases there could have been no liability beyond the consequences of legal malice. In effect, the instruction says the circumstance cannot mitigate the damages unless it wholly prevents recovery on one of the grounds of liability. Plainly it means drunkenness of the defendant at the time of a slanderous utterance is not a mitigating circumstance at all. The other one is very similar and is condemned by the same process of reasoning. It told the jury heat of passion on the occasion of the use of the

words provoked by quarrelsome and insulting words of the plaintiff was "no defense or justification for the defendant for using such words," but could be "considered only upon the question of actual malice." This is too narrow, since it limits consideration of the circumstance and its effect to one purpose only, and denies it force and effect in the determination of the amount of the damages. The manifest tendency of the instruction, if not its design, was to deny the circumstance any mitigating effect, in case of liability for an act malicious in fact as contradistinguished from one malicious in law.

Actual malice on the part of the defendant does not preclude his right of mitigation by proof of circumstances inducing the utterance of the slanderous words or other wrongful act. "If the malice of the defendant is to be punished by the imposition of additional damages or smart money, then malice on the part of the plaintiff, by which he provoked the injury complained of, should be subject to like punishment, which, in his case, can only be inflicted by withholding the damages to which he would otherwise be entitled. The law is not so one-sided as to scrutinize the motives and punish one party to the transaction for his malicious conduct and not to make allowance for the infirmities of men when smarting under the sting of gross and immediate provocation." Dixon, C. J., in *Morley* v. *Dunbar,* 24 Wis. 183; *Wilson* v. *Young,* 31 Wis. 574; *Fenelon* v. *Butts,* 53 Wis. 344; *Corcoran* v. *Harran,* 55 Wis. 120. Generally mitigating circumstances are not allowed to reduce the actual damages, but they may reduce without wholly defeating, the exemplary or vindictive damages. Sutherland on Damages, secs. 149 to 167.

Intoxication of the defendant at the time of the utterance of the slanderous words is a mitigating circumstance. Sutherland on Damages, sec. 153; 18 A. & E. Ency. L. 1007; Howell, 10 Ired. 84; *Gates* v. *Meredith,* 7 Ind. 440; *Jones* v. *Townsend,* 21 Fla. 431. But one case asserts the contrary, *Mix* v. *McCoy,* 22 Mo. App. 488, not a court of last resort. Provocation is also a mitigating circumstance. Sutherland on Damages, sec. 152; Cyc. 518; 18 A. & E. Ency. L. 1007, 1108; Newell, Defamation, p. 515.

Two instructions, requested by the defendant and refused by the court, were designed to direct the jury to the subject

of mitigation in general terms; and the court, after some modifications thereof, gave them. As requested, the first one would have told the jury the defendant had the right to prove and explain all the facts and circumstances surrounding the speaking of the words and to show and explain them in mitigation of damages. The court altered it so as to make it say the jury might consider the facts and circumstances for the purpose of disproving malice and as bearing on the quantum of damages. The second one, as offered, would have authorized the jury, in estimating the damages, to consider all the attendant facts in mitigation of the damages and also the degree of malice on the part of the defendant. This the court altered only to the extent of the insertion of the phrase "if any" after the phrase "mitigation of damages." The modifications were clearly not prejudicial. On the contrary, they wrought a decided improvement as to both form and substance.

But neither these two instructions as given nor any others have corrected the error in the two given at the instance of the plaintiff, already noted. They abstract or withhold from the operation of the last two discussed, relating to mitigation, the principal mitigating circumstances disclosed by the evidence. If not, then all four of them would be contradictory and misleading.

The principle of mitigation is not denied by the Virginia cases. On the contrary, it is expressly asserted and approved in *Bourland* v. *Eidson,* 8 Gratt. 27. It is also declared in *Sweeney* v. *Baker,* 13 W. Va. 158. There are in these and other decisions enlightening discussions as to the right to prove, under the plea of not guilty, as matter working mitigation, facts tending to establish the truth of the words spoken, and subsequent self-serving declarations, but this case involves no question of that kind.

For the errors noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded for New Trial.*

ROBINSON, JUDGE, does not concur.