William E. Beaver, *Et Al.*

*v.*

W. E. Hitchcock, *Et Al.*

(No. 12618)

Submitted January 24, 1967.    Decided April 4, 1967.

*H. D. Rollins,* for appellants.

*Peters, Merricks, Leslie, Kenna & Mohler, W. E. Mohler,* for appellees.

CAPLAN, JUDGE:

In this civil action instituted in the Court of Common Pleas of Kanawha County, the plaintiffs, William E. Beaver and Helen Beaver, seek recovery for damages to their real property and improvements thereon, alleged to have been caused by the negligent excavation and removal of lateral support from their property by the defendants, Glen O. Carper and William W. Carper, d.b.a. Glen O. Carper Construction Company, W. E. Hitchcock, Josephine Hitchcock and Judge Matheny d.b.a. Matheny & Matheny.

There were two trials of this case, the first trial resulting in a jury verdict in the sum of $4,500.00 for the plaintiffs against the Carpers. The jury also found for the defendant Matheny. On the motion of the plaintiffs the Hitchcocks were dismissed as parties defendant without prejudice. The defendants filed a motion requesting the court to set aside the verdict and grant a new trial, a similar motion having been filed by the plaintiffs as to the jury's finding in favor of defendant Matheny. Each of these motions was overruled and the Carpers filed a petition for writ of error and supersedeas in the Circuit Court of Kanawha County. The writ was granted and upon consideration the court, on the ground that damages were improperly proved, reversed the judgment of the common pleas court and remanded the case for a new trial.

On July 28, 1965 the case again came on for trial. After the presentation of evidence by both parties, the

case was submitted to the jury. The jury on August 1, 1965 announced that it was unable to agree upon a verdict and it was discharged. Shortly thereafter the defendants asked leave to file a motion for summary judgment, which leave was granted and on September 30, 1965 their motion was filed. Notice thereof was served on the plaintiffs on September 16, 1965. In their motion for summary judgment the defendants asserted that there was no genuine issue as to any material fact alleged in the complaint; that Matheny having been exonerated of negligence, no liability could be imputed to the remaining defendants; and that they could not be liable for the reason that they were not the owners of the property when the slide occurred and damage was done. By an order entered on December 15, 1965 the court granted summary judgment in favor of the defendants. The basis for the ruling of the court in granting summary judgment for the defendants was that Judge Matheny, agent of the Carpers, having been exonerated of any negligence, prevented the imposition of liability on the Carpers; that there was no sufficient proof of other acts of negligence on the part of the Carpers; and that the allegation of the removal of lateral support by the defendants was not established by the evidence. Upon appeal to the circuit court the judgment of the court of common pleas was affirmed as being plainly right and this appeal was prosecuted.

At the time of the alleged damage, the plaintiffs owned and occupied a house situated on Lot 1 of the Grover Connor Addition to the City of Charleston. This house had been constructed in the latter part of 1953 and the early part of 1954 and has been continuously occupied since its completion. The Beavers purchased this property for $21,500.00 in May, 1959 and have resided therein since that time. According to their testimony, no difficulty had been encountered, in relation to slippage of their property, from the time the house was constructed until after the excavation complained of here occurred.

In July, 1959, the Carpers, who owned Lots 131 and 132, adjacent to and immediately below the plaintiffs' property, entered into a contract with the Hitchcocks wherein they agreed to construct a house on Lot 131 and to convey to them said lot and house. Preparatory to the construction of the house, the Carpers employed Judge Matheny, an excavating and trucking contractor, to do the excavation work for the basement. This work was performed in July, 1959 and the house was built. Although the Hitchcocks occupied it in September of that year, the house was not completed until October 20, 1959.

Mr. Hitchcock testified that on November 28, 1959 he noticed a slippage of the back portion of his lot where the excavation had been made. He reported this to the Carpers. The slide of the bank continued and on December 22, 1959, Judge Matheny, at the Carpers direction, removed approximately seventy cubic yards of dirt. The slippage of earth continued and within a few months thereafter the plaintiffs' land began to slide, causing sizable cracks and crevices therein. Whatever the cause, the plaintiffs' property was substantially damaged. The sizeable cracks in the ground came within six feet of the plaintiffs' house and caused a four foot drop in front thereof. Photographs taken by Mr. Beaver showing the condition of his property were introduced into evidence.

In these circumstances the plaintiffs instituted this action. In their complaint they allege that the Carpers, upon making the steep excavation on Lot 131, negligently and wrongfully failed to shore up such excavation or take any precautions to maintain lateral support for the plaintiffs' property. The position of the defendants is set out in their motion for summary judgment, the grounds therefor being noted above.

The principle issue to be resolved on this appeal is whether, in the circumstances of this case as revealed by the evidence, the action of the trial court in award-

ing the defendants summary judgment was proper. It is now basic, in view of R.C.P., Rule 56 (c) and numerous decisions of this Court, that summary judgment will not be granted if, from the evidence before the court, there is a genuine issue as to any material fact. *Deane v. Kirsch,* 148 W. Va. 429, 135 S. E. 2d 295; *Hatten v. Mason Realty Company,* 148 W. Va. 380, 135 S. E. 2d 236; *Aetna Casualty and Surety Company v. Federal Insurance Company of New York,* 148 W. Va. 160, 133 S. E. 2d 770. Furthermore, as reflected in the above cited cases, the party who moves for a summary judgment must bear the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment.

In the instant case the evidence is clear and undisputed that a slide occurred on the plaintiffs' land, resulting in substantial damage. This fact alone does not create liability. As a general rule, an owner of land is entitled, *ex jure naturae,* to lateral support in the adjacent land for his soil, but not for the buildings erected thereon. Liability does exist, however, if the adjoining owner of land negligently performs an act on his property so as to cause damage to his neighbor's land even though a building has been erected on such neighbor's land. That this is the well established rule in this jurisdiction is cogently demonstrated by the language in Point 4 of the Syllabus of *Walker v. Strosnider,* 67 W. Va. 39, 67 S. E. 1087, which reads as follows: "4. An adjoining owner, excavating on his own land, must exercise reasonable care, prudence and skill, in doing so, for the safety of buildings, if any, standing on the adjacent land. This duty is enjoined, not by any right of support, *ex jure naturae,* that the owner of the building has in the adjoining land, but by a legal rule of conduct, requiring every owner of property so to use it as not to injure his neighbor's." In support of this proposition see also *State ex. rel. Griggs v. Graney,* 143 W. Va. 610, 103

S. E. 2d 878; *McCabe v. The City of Parkersburg,* 138 W. Va. 830, 79 S. E. 2d 87; and *Law v. Phillips,* 136 W. Va. 761, 68 S. E. 2d 452, 33 A.L.R. 2d 95. Therefore, it is most pertinent here to determine whether the damage to the Beavers' property was caused by the negligence of the Carpers.

The plaintiffs contend that the slide was caused by the negligence of the defendants in making a steep excavation on a slope below and adjacent to their property without building a retaining wall or taking some precaution to prevent the slide that occurred. In support of their complaint the plaintiffs produced several witnesses. Mr. Robert Hayne, a consulting engineer, appearing for the plaintiffs, testified that the subject area was highly susceptible to slides. Referring to the excavation in question this witness said: "The excavation of the material at the bottom of the slope and with a back slope in excess of what is normal practice did cause the slide. * * * With an excessive slope such as forty-five degrees it is customary to put in a retaining wall." He further said that a retaining wall would have prevented the Beaver land from sliding. Mr. Hitchcock estimated the angle of the excavation to be forty-five degrees.

Mr. F. S. Workman, a geological engineer, testified for the plaintiffs and stated that in his opinion the excavation at the rear of Lot 131 made in constructing the Hitchcock house initiated the slide. He indicated that the slide could have been prevented by an adequate structure to replace the removed lateral support. Other witnesses appeared to show an appreciable decline in the market value of the plaintiff's property after the slide.

In an effort to refute the plaintiffs' testimony, the defendant produced several witnesses. The testimony of Mr. George Hall, who testified at the first trial, was read. He said that the slide may have been caused by the high water content of the soil. Mr. Orville

Hamilton, an inspector for the Federal Housing Administration, testified he officially approved the Hitchcock house after it had been completed. Mr. J. Lewis Hark, engineer for the City of Charleston, examined the property after the slide. He stated that in his opinion the slide was caused by several factors, namely, the septic tank, the excavation for the Hitchcock house and the rains that occurred in November 1959.

From the foregoing it is clear that the record is replete with evidence showing that there was a dispute as to the cause of the slide. When one institutes an action to recover damages caused by a land slide, the determination of the cause of such slide certainly is a material fact and, when the witnesses differ as to the cause, a genuine issue as to a material fact clearly exists. Therefore, unless the defendants were relieved of liability for some reason, as a matter of law, this question should have been presented for determination by a jury and the granting of summary judgment constituted reversible error.

The Carpers, defendants below, contend that the granting of summary judgment was proper for the reason that the plaintiffs' claim was predicated on the alleged negligent acts of Matheny in connection with the excavation made by him on the Hitchcock lot. They assert that since Matheny was exonerated of negligence, no negligence could be imputed to them. An examination of this record readily reveals the fallacy of this contention and we find it to be without merit.

In their amended complaint the plaintiffs do not allege that the excavation was negligently made; nor in their proof is there any attempt to show that Matheny performed in a negligent manner. In fact there was a tacit, if not an explicit, admission that Matheny performed his task in a workmanlike manner. The complaint alleges that the ''Carper Construction Company, undertook to excavate and did excavate on the

aforesaid Lot No. 131 *** that in the course thereof *** they *** negligently and wrongfully failed to shore up or take any precautions to maintain the lateral support of the part of said Lot 131 not excavated and the part of said lot which adjoins and laterally support the plaintiff's lot; ***.'' The evidence reveals that the Carpers employed Mr. Matheny to make the subject excavation. That this was Matheny's sole duty and that it was not his obligation or function to build a retaining wall or take any precaution to prevent a slide was revealed by his testimony when he answered, in relation thereto, ''It wasn't my job and the only part I had was the excavation.''

In view of the allegations in the complaint and of the evidence showing the ultimate responsibility in the Carpers to have taken some precaution to prevent the slide, we are of the opinion that there was evidence of negligence on the part of the Carpers independent of that for which they would be accountable under the doctrine of *respondeat superior*. Therefore, the question of negligence of the Carpers should have been determined by the jury.

We have carefully considered each of the cases cited by the defendants and find that they are not applicable in the determination of this question. In those cases there was no allegation of negligence other than that of the agent who performed the act complained of. There, under the doctrine of *respondeat superior,* no separate act of negligence being charged to the principal, the exoneration of the agent necessarily would acquit the principal of any wrongdoing. Such is not the case here. The Carpers were charged with negligence aside from the act of excavating and there was evidence thereof. See *Trump v. Bluefield Water Works & Improvement Company,* 99 W. Va. 425, 129 S.E. 309 and *Walton v. Cherokee Colliery Co.,* 70 W. Va. 48, 73 S.E. 63.

A further contention of the defendants is that they are not liable for damages to the plaintiffs' property

for the reason that when the damages occurred they no longer owned the land where the slide took place. This defense is not available in the circumstances of this case. When the Carpers caused the excavation to be made on Lot 131, they owed a duty to the plaintiffs to act in a manner so as not to cause damage to the plaintiffs' property. The defendants were fully cognizant of the slippage of the land as evidenced by their effort, though inadequate, to remedy the condition. This was not a case where the Hitchcocks, the new owners, had an opportunity to correct the defects created by the vendors. The damage was done before the property was conveyed and the vendors could not escape the duty owed to the adjoining property owners by selling to the Hitchcocks.

A motion to reverse having been made in this case, such motion is granted and the case is remanded with directions that a new trial be awarded.

*Motion to reverse is granted with directions.*