# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Verda B. Wiseman and Charles E. Wiseman,
Petitioners Below, Petitioners**

**vs) No. 12-1312** (Randolph County 12-C-61)

**Randolph County Commission,
Chris See, Randolph County Commissioner,
Joyce Jones, Randolph County Commissioner,
Mike Taylor, Randolph County Commissioner,
Jim Cain, Randolph County Dog Warden, and
PetSmart, Inc., PetSmart Charities, Inc.,
PetSmart Charities Rescue Waggin Program,
Maria Kostakos, President of the Randolph
County Humane Society, Inc., Randolph County
Humane Society, Inc., Kelly Scheidegger, Manager
of the Randolph County Human Society,
Defendants Below, Respondents**

**FILED**

October 18, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Verda and Charles Wiseman, by counsel J. Burton Hunter III, appeal four orders entered on October 1, 2012, by the Circuit Court of Randolph County in petitioner's action for the alleged wrongful seizure and subsequent sale of their dog. The orders on appeal dismissed the Randolph County Commission and the individual Randolph County Commissioners (Chris See, Joyce Jones, and Mike Taylor), PetSmart, Inc., and PetSmart Charities, Inc.; and granted summary judgment in favor of the Randolph County Dog Warden Jim Cain and the Randolph County Humane Shelter, its President Maria Kostankos, and its Manager, Kelly Scheidegger. The County Commission and the individual Commissioners filed a response by counsel Peter G. Zurbuck and Robert C. Chenoweth. PetSmart, Inc. and PetSmart Charities, Inc. filed a response by counsel, R. Ford Francis. The Dog Warden filed a response by counsel, Peter G. Zurbuck and Robert C. Chenoweth. The Randolph County Humane Society, Inc., its President, and its Manager filed a response by counsel Thomas G. Steele. Petitioners filed a single reply to all four responses.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Petitioners filed a complaint against respondents alleging that their nine-year-old, boxer-mix dog, "Nikki," was wrongfully seized by the dog warden and taken to the Randolph County Humane Society's shelter. Petitioners further allege that the dog warden prevented petitioners from retrieving the dog from the animal shelter by threatening them with misdemeanor charges and fines, and kept a neighbor and petitioners' daughter from adopting the dog. Petitioners believe that the dog warden's actions where in furtherance of a conspiracy to transport the dog to a more urban area where she could be sold for a profit.

Petitioners claim the following: Nikki was a treasured family pet who was well-groomed, gentle, obedient, spayed, and beloved by the petitioners' three young grandchildren. On February 3, 2012, Nikki made her usual morning trip to the home of petitioners' neighbors which was situated about a quarter mile from petitioners' home. The neighbor would give Nikki treats each morning when she arrived on his porch. The dog warden seized Nikki from the neighbor's porch over the neighbor's protests and transported her to the Randolph County Humane Society's shelter.

Within hours, petitioners went to the shelter to reclaim their dog. The dog warden gave them a hostile reception and told them that if they asked for the dog to be returned, they would be charged with three misdemeanors (failing to pay the dog tax, failing to obtain a rabies vaccine, and allowing the dog to run at large), arrested, and fined over $600. The dog warden made it clear that if petitioners did not ask for the dog to be returned, they would not be charged or fined.

The next day, February 4, 2012, petitioner's neighbor attempted to adopt Nikki from the shelter. The dog warden told the neighbor that he could adopt the dog in three to four days. The neighbor returned three or four days later and was told by a shelter worker that he needed to talk to the dog warden. The neighbor called the dog warden from the shelter. The dog warden told the neighbor that he could not adopt the dog and that the dog would not be returning to the community. The neighbor claimed he heard Nikki barking while he was at the shelter.

Petitioners' daughter then went to the shelter to adopt Nikki. She asked for a dog that met Nikki's description. The shelter workers told her that no such dog was available. Petitioners' daughter believed that the shelter workers lied to her and that Nikki was at the shelter and available for adoption.

Petitioners (1) claim that Nikki was wearing a collar and had received a rabies vaccine, (2) admit that they had not paid personal property taxes on the dog, and (3) estimate she had a monetary value of $500. Petitioners believe that dogs are taken from the State of West Virginia to geographical areas of greater economic prosperity, and then sold under the guise of rescuing an animal. In support of their conspiracy theory, petitioners cite to e-mails from a veterinarian who appears to be from Connecticut and from a retired prosecutor from Buffalo, New York. Petitioners' counsel adds that, on two or more occasions, he inadvertently witnessed the transport of numerous dogs packed into vans while he was traveling out-of-state. Counsel claims that when his wife inquired about the dogs, she learned from the operators of the vans that the dogs were pets from West Virginia who were being transported to Connecticut and New York.

Respondents counter petitioners' statement of the facts with the following: On February 3, 2012, the dog warden received a telephone complaint from an elderly man who claimed that two dogs were running at large—one of whom was Nikki, that Nikki had jumped on him and on his elderly wife, and then defecated in the couple's yard. The complainant indicated that if the dog warden did not collect the dog, he would take care of the issue with his rifle. The dog warden found Nikki running at large, seized her on petitioner's neighbor's porch, and impounded her. The dog was not wearing a registration or rabies vaccine tag at the time she was seized.

The dog warden admits that petitioners came to the Humane Society's shelter to retrieve their dog later that same day. The dog warden claims he told petitioners that (1) if they reclaimed the dog, they would be issued three citations which they could challenge in magistrate court by showing proof that they had paid personal property taxes on the dog and that she had received a rabies vaccination; (2) upon showing such proof, the magistrate would likely dismiss the registration and rabies citations, but the "running at large" citation would remain; and (3) the fine for all three citations would be $600. The dog warden told petitioners that he did not cite dog owners who did not claim their dogs from the shelter, generally because the owners were unknown. The dog warden claims that, in response, petitioner-husband told the warden to "keep the f---ing dog."

Petitioners twice attempted to reclaim Nikki without paying the fines, through their neighbor and their daughter. The human society did not release the dog to either because it had a policy of not adopting a dog into the neighborhood from which it was seized. Petitioner did not redeem Nikki within the shelter's five day hold period. Thereafter, Nikki was legally adopted.

Petitioners filed their complaint against respondents on March 19, 2012.

On April 11, 2012, the Humane Society, its president, and manager filed an answer.

On April 24, 2012, (1) the county commission and the individual commissioners filed a motion to dismiss petitioners' complaint pursuant to Rule 12(b)(6) of the West Virginia Rule of Civil Procedure; (2) the dog warden filed an answer; and (3) PetSmart, Inc. and PetSmart Charities, Inc. filed a Rule 12(b)(6) motion to dismiss. Thereafter, petitioners and the dog warden both submitted and responded to written discovery requests.

On July 17, 2012, the dog warden filed a motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure.

The circuit court held a hearing on all motions on August 10, 2012. On October 1, 2012, the circuit court (1) granted the county commission and the individual commissioners' motion to dismiss; (2) granted the dog warden's motion for summary judgment; and (3) granted PetSmart, Inc., and PetSmart Charities, Inc.'s motion to dismiss. Thereafter, petitioners conceded that the Humane Society, Inc., its president, and manager were entitled to judgment as a matter of law. On October 24, 2012, the circuit court granted summary judgment in favor of the Humane Society, its president, and manager.

Petitioners now appeal the circuit court's orders dismissing their action against the county commission, the individual commissioners, PetSmart, Inc., and PetSmart Charities, Inc., and the orders granting summary judgment in favor of the dog warden and the Humane Society, its president, and manager.

We review a circuit court's order granting a motion to dismiss de novo. *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*., 194 W.Va. 770, 461 S.E.2d 516 (1995). Likewise, we review a circuit court's entry of summary judgment de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

Petitioners raise four assignments of error on appeal. Petitioners first argue that the circuit court erred in granting the motions to dismiss and the motions for summary judgment. Petitioners claim that their complaint was sufficient on its face to raise justiciable issues and genuine issues of material fact because it alleged that the respondents acted in concert for their mutual benefit. As for the dog warden, petitioners argue that their complaint alleged that he (1) made extortionist threats that criminal charges would be filed against petitioners if they sought the return of their dog, (2) knowingly and intentionally abused his police powers with the purpose of intimidating petitioners into giving up valuable property, and (3) lied regarding the status, prospects, and location of the dog. Petitioners assert that the dog warden, in his written discovery responses, admitted to telling petitioners that they would be cited and fined if they attempted to retrieve their dog.

In regard to the county commission and the individual commissioners, petitioners' complaint contains no legal claims or specific factual allegations against these respondents. Pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, the trial court may dismiss a pleading for failure to state a claim upon which relief can be granted. Moreover, "essential material facts must appear on the face of the complaint. *See Greschler v. Greschler*, 71 A.D.2d 322, 325, 422 N.Y.S.2d 718, 720 (1979)." *Fass v. Nowsco Well Service*, Ltd., 177 W.Va. 50, 51, 350 S.E.2d 562, 563 (1986). "[D]espite the allowance in Rule 8(a) that the plaintiff's statement of the claim be "short and plain," a plaintiff may not 'fumble around searching for a meritorious claim within the elastic boundaries of a barebones complaint. . . ." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*., 194 W.Va. 770, 776, 461 S.E.2d 516, 522 (1995) (internal citation omitted). As such, we find that the circuit court did not err in granting the commission and the individual commissioners' motion to dismiss pursuant to Rule 12(b)(6).

As to the dog warden, petitioners' complaint failed to raise any issues of material fact regarding him and failed to include any specific factual allegations supporting either their conspiracy claim or their claim that the dog warden acted outside his legal authority when he seized and impounded petitioners' dog. The dog warden's legal authority is set out, in part, in West Virginia Code § 19-20-6(a), which requires a dog warden to seize any dog more than six months of age that is not wearing a valid registration tag:

> The county dog warden and his deputies shall patrol the county in which they are appointed and shall seize on sight and impound any dog more than six months of age found not wearing a valid registration tag, except dogs kept constantly confined in a registered dog kennel. They shall be responsible for the

proper care and final disposition of all impounded dogs . . . When any dog shall have been seized and impounded, the county dog warden shall forthwith give notice to the owner of such dog, if such owner be known to the warden, that such dog has been impounded and that it will be sold or destroyed if not redeemed within five days. . . .

Petitioners' dog was not wearing a registration tag when the dog warden seized her and she was nine years old. Further, the dog warden impounded the dog at the Humane Society and gave petitioners actual notice of the seizure when he met with them on the day their dog was seized. Finally, petitioners did not claim their dog within the five day holding period. Hence, the circuit court did not err in finding that the dog warden complied with his statutory duties in seizing and impounding petitioners' dog. Nor did the circuit court err when it granted summary judgment in the dog warden's favor. "Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Syl., *Bennett v. Coffman*, 178 W.Va. 500, 361 S.E.2d 465 (1987). Moreover, summary judgment is "'designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial,' if there essentially 'is no real dispute as to salient facts' or if it only involves a question of law. *Painter*, 192 W.Va. at 192 n. 5, 451 S.E.2d at 758 n. 5, *quoting Oakes v. Monongahela Power Co.*, 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974)." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 58, 459 S.E.2d 329, 335 (1995).

Regarding PetSmart, Inc. and PetSmart Charities, Inc., petitioners' complaint contained no claim of wrongdoing against them as required by Rule 8 of the Rules of Civil Procedure. In fact, PetSmart, Inc. and PetSmart Charities, Inc. are only mentioned three times in the complaint as follows: (1) PetSmart, Inc. is an Arizona Corporation authorized to do business in West Virginia; (2) PetSmart Charities, Inc. is a corporation authorized to do business in West Virginia and Randolph County; and (3) petitioners sought to ascertain relevant facts regarding the business relationship between the Humane Society and PetSmart, Inc. and PetSmart Charities, Inc. (including the Rescue Waggin Charity). "[B]ald statements or a carelessly drafted pleading will not survive a Rule 12(b)(6) motion to dismiss. . . ." *Highmark West Virginia, Inc. v. Jamie*, 221 W.Va. 487, 491, 655 S.E.2d 509, 513 (2007) (citing *Fass v. Nowsco Well Service*, 177 W.Va. 50, 52, 350 S.E.2d 562, 564 (1986)). Hence, the circuit court did not err in granting PetSmart, Inc. and PetSmart Charities, Inc.'s motion to dismiss.

Finally, in regard to the Humane Society, Inc., its president, and manager, we note that petitioners, in their brief on appeal, do not assign any error to the circuit court's order granting summary judgment in these respondents favor. That said, we find that the circuit court properly granted summary judgment because petitioners' complaint contained no specific assertions that these respondents violated any duty regarding the impoundment or disposition of petitioners' dog, and made no showing of an issue of material fact regarding these respondents. The Humane Society, Inc. merely housed the dog during the five-day impoundment period set by West Virginia Code § 19-20-6(a). Further, § 19-20-6(a) does not impose any duty on these respondents regarding the disposition of the dog once it was removed from their shelter. Therefore, we find that the circuit court did not err in granting summary judgment in favor the Humane Society, Inc., its president, and manager

Petitioners' second assignment of error is the bald statement that the circuit court erred in refusing to allow discovery that denied their constitutional right to due process and prevented them from developing essential facts. Petitioners provide no information regarding how or why the circuit court denied discovery. Moreover, in their brief on appeal, petitioners do not deny that they submitted written discovery to respondents and that respondents replied to those requests. In fact, petitioners cite to an answer given by the dog warden in response to written discovery. "On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973). Here, because petitioners fail to make any showing that there was error below, we presume a ruling regarding discovery by the circuit court, if any, was correct.

Petitioners' third and fourth assignments of error are, respectively, that they were denied their day in court and their right to a trial by jury. However, because the circuit court properly granted respondents' motions to dismiss or motions for summary judgment, we find these assignments of error to be moot.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 18, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II